UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **KENNITH MATHEWS** | \* | **CIVIL ACTION NO. 05-2128** |
| | \* | |
| | \* | |
| **VERSUS** | \* | |
| | \* | **JUDGE FALLON** |
| **METROPOLITAN LIFE INSURANCE** | \* | |
| **COMPANY AND SIEMENS BUSINESS** | \* | |
| **SERVICES, INC.** | \* | |
| | \* | **MAGISTRATE ROBY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S OPPOSITION TO SEIMENS' MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

The action by plaintiff, Mathews, against Siemens Business Services (SBS) for breach of fiduciary duty lies in a separate and instant claim apart from the claim against Metropolitan Life Insurance Company (MetLife) for failure to pay long term benefits. SBS holds itself out to its employees including Mathews as the plan administrator to various benefits provided to Mathews. As the administrator, SBS relied upon the actions and decision of MetLife to determine Mathew's future benefits and employment status at the company. Those benefits are separate and apart from the benefits provided by MetLife.

Mathews was employed by SBS in July of 1996 when SBS purchased the company that Mathews was currently employed. During his tenure at SBS, he was involved in non work motorcycle accident which left him severely disabled and unable to work. He was placed on short term disability by his employer and began receiving short

term benefits provided to him by SBS. When the short term benefits expired under the plans provided by SBS to its employees, Mathews sought long term disability benefits.

The dispute began to arise when MetLife disputed whether Mathews could return to work. The claim against MetLife is the other distinct part of the case which is not part of this motion. SBS's role was to provide MetLife an accurate description of Mathews' "job duties." What SBS provided to MetLife was an old job description written by its predecessor company purchased by SBS without providing an accurate current version of Mathews' "job description." *Exhibit 2a and 2b*.

Mathews complained to MetLife about the job description via emails and then requested an appeal regarding the decisions the MetLife made toward his disability saying the he could perform the work as described by SBS. MetLife referred to DOL "job descriptions" to determine his work eligibility.

The critical juncture of the case involves the termination of Mathews by SBS. Once SBS received the denial of benefits by MetLife, SBS sent notice to Mathews to return to work or else face termination. Mathews was not able to return to work because of his disability and was terminated by SBS on September 30, 2003. *See Exhibit 1*. MetLife had to determine his work eligibility under the terms of its plan. *See Exhibit 3*.

Mathews was receiving benefits other that short term disability benefits provided by MetLife. He was receiving his medical policy benefits under his employers medical policy plan at the employee rate. This medical policy plan paid for Mathew's medical treatment to his injuries from his motorcycle accident; it also paid for his general health. The medical policy was terminated when he left the employ of SBS even though he had COBRA rights. Once COBRA rights end, then he would have had to search for an

affordable policy to pay for his injuries. Had he been found to be disabled by his employer, he would have continued to have medical insurance in the same manner as Siemens provides to its retired employees; thus allowing him to maintain health insurance to pay for his motorcycle injuries and other health problems that he might encounter as he ages. In effect, Siemens' actions made him uninsurable after he was terminated.

## ARGUMENT

The United States Supreme Court set forth the cause of action under Section 502. In the case of <u>Varity Corporation v. Howe, et. al,</u> 516 U.S. 489, 116 S.Ct.1065, 134 L. Ed. 130 (1996), a lengthy discussion of the various causes of action ensued. In <u>Varity</u>, the Court was faced with the company who had transferred benefits to money losing separately incorporated subsidiary and enticed employees to transfer. When the money losing subsidiary lost money as expect, the employees and retirees sued. They sought their old benefits because the employer misled them into transferring into a losing company. The <u>Varity</u> Court accepted the district court's finding that the employees could have thought that the employer was acting as employer and fiduciary at the same time. The <u>Varity</u> Court found that Section 502(a)(3) authorizes a lawsuit for individualized equitable relief for breach of fiduciary obligations. The Court also looked to Section 409 as a means for relief by employees but determined that it was not the exclusive remedy. The Court found that 502(3) and (5) act as a "safety net" offering appropriate equitable relief for injuries caused by violations that 502 does not adequately remedy elsewhere. Defendant misstates the holding in Varity by suggesting that there can be no claim for

redress under 502(a)(3). A careful reading of the decision by the Court in Varity does not support the defendant's position.

In *Lockheed Corp. v Spink*, 517 U.S. 882, 116 S.Ct. 1783 (1996), the Court had to determine whether Lockheed had violated section 406(a) when it changed the nature of its plan. The Court found that Lockheed was acting as a settler and not a fiduciary when it decided to change the terms of its welfare plan to its employees. Defendant has cited *Lockheed* for the proposition that it defines what a fiduciary relationship is between the beneficiaries and the employer. However, the *Lockheed* Court did not go through the analysis of what a fiduciary is in every instance.

Defendant again cites another Supreme Court case for the wrong proposition. In *Pegram v. Herdrich*, 530 U.S.211, 120 S.Ct.2143, 147 L.Ed.2d 164 (2000), the Court addressed the threshold question of whether Carle, an HMO, acted as a fiduciary for a medical insurance plan for State Farm. The Court further through Justice Souter decided unanimously that Carle was not a fiduciary when it acts through its physician members. In *Pegram*, the core facts involved medical treatment for appendicitis and peritonitis resulting in a malpractice claim. The physician made an apparent wrong decision causing Herdrich todevelop peritonitis. The Court dissected the pleadings of Herdrich and looked very carefully at the duties of the plan and the physician members. The Court noted pure "eligibility decisions" versus the "treatment decisions" with "eligibility decisions" falling under the fiduciary umbrella. See *Pegram*, at pages 2154-2155.

Mathews has certainly met the Pegram test when asserting that Siemens is a fiduciary. In the instant matter, Matthews could not obtain long term benefits without a job description that accurately described his work. Siemens was the only party that could

provide the job description and what Siemens did was provide an Entex description and not one of their own or a description by Mathew's superiors. This breach has caused Matthews both losses of long term coverage and health benefits under the Siemens plan. The fiduciary has a duty to act in the interest of the beneficiary. *Pegram*, p.2157. However, it should not be mistaken that the holding of *Pegram* dealt with the competing federal statutes governing HMOs and mixed eligibility decisions by HMO physicians wherein Herdrich had failed to state a claim. Eligibility decisions are the basis for fiduciary relationship to the employee especially in the manner administered.

Interestingly, there is a "Catch 22" forming in this litigation. MetLife says that they rely on the record and thereby owe no benefits to Mathews because the record supports their decision which includes an Entex job description, but Siemens says it is not a fiduciary because it only supplied MetLife with the "Entex job description." The physician determined that Mathews was capable of performing the work set forth under the plan and made that decision from job descriptions in the file including among other descriptions such as a DOL labor description for a similar job to Mathew's. Once that decision was made Siemens then made decisions on Mathews continued eligibility for medical insurance.

Finally contrary to Siemens contention, supplying a job description to MetLife is not a ministerial act. Siemens had the obligation as plan administrator to assure itself that MetLife had accurate information necessary to make a complete and thorough decision. Failing to do so otherwise caused Mathews the loss of his medical insurance in the future among other benefits that he would have received if he had been placed on medical disability. Exhibit 4.

## CONCLUSION

Summary judgment is appropriate only when there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett,</u> 477 U. S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Factual controversies are resolved in favor of the non-moving party only if there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. <u>Little v. Liquid Air Corp.,</u> 37 F. 3d 1069, 1075 (5TH Cir. 1994) (en banc). The court must determine whether there are any genuine issues of material fact that preclude judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U. S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). It is submitted that Plaintiff has met his <u>Celotex, Liquid Air and Anderson</u> burden by submitting credible admissible evidence that involves genuine issues of material fact to preclude dismissal of his claim. Plaintiff submits Defendant's Motion for Summary Judgment should be denied.

        Respectfully submitted,

        **TAGGART MORTON OGDEN STAUB**
        **ROUGELOT & O'BRIEN, LLC**

        <u>s/*Charles M. Raymond*</u>
        CHARLES M. RAYMOND (# 11407)
        2100 Energy Centre
        1100 Poydras Street
        New Orleans, LA 70163-2100
        Telephone: 504-599-8500
        Facsimile: 504-599-8501
        E-mail: craymond@taggartmorton.com

## **CERTIFICATE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been filed electronically through the EC/EMC system to the USDC, EDLa and that a copy has been served on

Virginia Roddy
650 Poydras Street, Suite 1650
New Orleans, LA 70130-6114

And

Edward F. Harold
FISHER & PHILLIPS, L.L.P.
201 St. Charles Ave., Suite 3710
New Orleans, LA 70170

by placing same in the United States Mail, postage prepaid, addressed to their respective offices, or by email, or by facsimile transmission or by electronic notice from the USDC, ED La, Clerk's office through the EC/EFC filing and notice this 08 day of August, 2006.

*s/Charles M. Raymond*
CHARLES M.RAYMOND